817 So.2d 487 (2002)
Kenneth MERRITT,
v.
CITY OF OAKDALE, et al.
No. 01-1533.
Court of Appeal of Louisiana, Third Circuit.
May 15, 2002.
*488 Darrell K. Hickman, Attorney at Law, Alexandria, LA, for Plaintiff/Appellant Kenneth Merritt.
John F. Wilkes, III, Lisa E. Mayer, Borne, Wilkes & Brady, Lafayette, LA, for Defendant/Appellee City of Oakdale.
Court composed of NED E. DOUCET, JR., Chief Judge, ULYSSES GENE THIBODEAUX, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Kenneth Merritt sued the City of Oakdale, its mayor, its police chief, and four police officers for false arrest and imprisonment, malicious prosecution, intentional and negligent infliction of emotional distress, battery, and for violating 42 U.S.C. § 1983. After trial on the merits, the district court dismissed the suit upon finding that the police officers had probable cause to arrest Mr. Merritt for disturbing the peace. For the following reasons, we affirm.

Discussion of the Record
At approximately 10:30 p.m. on July 27, 1997, Officers Mitchell Way, Timothy Standish, and Andrew Gushlaw were on community patrol in Oakdale, Louisiana when they decided to cite an oncoming vehicle for emitting loud music. After turning around and activating their dash lights, the officers followed the vehicle until it pulled into the driveway of a residence at 506 Siely Street. There, they were joined by Officer Lloyd Willis. The driver of the stopped vehicle, Lorenzo Earl Holmes, was later determined to be the nephew of the owner of the residence, Billie Holmes.
After Officer Standish issued the citation, he obtained Mr. Holmes' consent to search the vehicle. Officers Standish, Willis, and Gushlaw participated in the search while Officer Way kept an eye on Mr. Holmes and his unidentified male passenger. During the search, Mr. Merritt, the boyfriend of Ms. Holmes, emerged from the residence and addressed the officers. The accounts of the exchange that followed are in conflict, but it is undisputed that Mr. Merritt was arrested and taken to the police station. Later that evening, he was taken by ambulance to a hospital after falling at the station. In a subsequent criminal proceeding, Mr. Merritt was acquitted of the charges of disturbing the peace and resisting arrest.
At the criminal trial, Officer Way testified that he first observed Mr. Merritt on the porch of the residence. When he directed his flashlight in that direction, Mr. Merritt exclaimed, "Get that damn light out of my face." Because Mr. Merritt was not armed and did not appear to be a threat, Officer Way returned his attention to the traffic stop. When he looked up again, he saw that Mr. Merritt had moved from the porch to the vehicle near Officer Standish and had again complained about the light in his face. When Officer Way told him to go back to the house, Mr. Merritt said "Fyou. This is my yard." Officers Way and Standish informed him that he was under arrest. Mr. Merritt then ran backwards into the house, where *489 he resisted the officers' attempt to hand-cuff him. During the struggle, a can of mace went off, but it sprayed Officer Way in the arm rather than Mr. Merritt. Officer Way testified that, while walking to the squad room at the police station, Mr. Merritt said, "Oops," and then just fell. Officer Way did not see any obstruction that could have caused the fall. During the booking check, Officer Way discovered that Mr. Merritt did not live at 506 Siely Street, as he had claimed at the scene, but, rather, his address was 529 Jackson Street.
Officer Standish also testified at the criminal trial. While he was searching Mr. Holmes' vehicle, he heard Mr. Merritt say, "Get that damn light out of my eyes," and saw Mr. Merritt walking toward him. He heard Officer Way tell him to go back inside, to which Mr. Merritt replied, "F you, this is my yard." At that point, all four officers stopped searching the vehicle and followed Mr. Merritt into the house.
At trial of the instant case, Officers Standish, Willis, and Gushlaw testified. (Officer Way was not available, as he had moved away by the time of the civil trial.) The officers testified that Mr. Merritt ignored instructions to return to the house and that he used profanity in a loud voice. They agreed that Mr. Merritt was interfering with the traffic investigation, as they had to stop the search of the vehicle when he disobeyed their instructions to return to the house. All three officers placed Mr. Merritt within four to five feet of the vehicle that had been stopped. Officer Gushlaw testified that, at the police station, he heard Mr. Merritt say, "Oops," and saw him fall to the floor, but he could not see what caused the fall.
At trial, Mr. Merritt denied that he approached Officer Standish near the Holmes vehicle. He testified that he remained only three feet from the front porch, which would have placed him about fifteen feet from the car. He also denied that he used profanity or raised his voice. Instead, he testified that Officer Gushlaw told him to "get the fback in the house." He admitted that he may have walked back to the house "in a hurriedly fashion," but he denied that he resisted arrest. He claimed that the officers grabbed him, pushed him down to the floor, and maced him. Later, at the police station, he asked for some water, but Officer Way pushed him into the booking room while he was still handcuffed, and he tripped over two chairs before falling to the floor. He testified that he remained on the floor until the ambulance arrived, refusing offers of help or to remove his handcuffs, because he wanted someone else to see that he was handcuffed when he fell. He admitted that he did not live at Ms. Holmes' house, but that he stayed there "sometimes off and on," mostly on weekends. When asked why he was so concerned about the traffic stop, he replied that he had to protect his house and Ms. Holmes' two children because "[p]olice shoot kids all of the time mistakenly and it wasn't going to happen in this case."
Ms. Holmes also testified that Mr. Merritt remained by the porch rather than near the car. She said that Mr. Merritt may have cursed, but that she was paying more attention to her nephew than to what was said. She did hear the officers say that if Mr. Merritt did not return to the house he would be arrested. She remembered that "a few more words passed" and that Mr. Merritt ran into the house with the officers behind him. She later saw Mr. Merritt at the police station on the floor, handcuffed and with his face down, but she did not know how he fell.
In written reasons, the trial court found that the officers had probable cause to arrest Mr. Merritt for disturbing the *490 peace, in violation of La.R.S. 14:103. Although the trial court recognized that Mr. Merritt's profane language was protected speech, it found that the use of that language within four to five feet of an area under investigation, combined with his refusal to leave upon request, was intended to prevent the officers from conducting their lawful business, occupation, or duty, as provided in La.R.S. 14:103.

Opinion
In his first assignment of error, Mr. Merritt presents several arguments that the trial court was manifestly erroneous in concluding that the police officers had probable cause to arrest him. First, he contends that the trial court in the instant case is "bound" by the judgment of acquittal in the criminal matter. Second, he argues that the officers were not performing an official investigation, but were instead engaged in a "fishing expedition." Hence, there was no probable cause to arrest him for resisting or interfering with an officer, under La.R.S. 14:108. Finally, he argues that the use of profanity without threatening conduct is insufficient grounds for an arrest.
In Tabora v. City of Kenner, 94-613 (La.App. 5 Cir. 1/18/95); 650 So.2d 319, writ denied, 95-402 (La.3/30/95); 651 So.2d 843, the plaintiff had previously been acquitted of disturbing the peace, simple battery of a police officer, resisting an officer, and other violations of city ordinances after an altercation at an airport. Notwithstanding that judgment of acquittal, the appellate court found no error in the dismissal of the plaintiffs civil suit on the grounds that the officers had probable cause for the arrest. The court stated: "The fact that he was found not guilty of the charges does not negate the finding of probable cause. The Constitution does not guarantee that only the guilty will be arrested." Id. at 324. In Gibson v. State, 99-1730, pp. 7 (La.4/11/00); 758 So.2d 782, 788-89 (citations omitted) (emphasis added), the supreme court discussed the difference between a determination of probable cause and a determination of guilt:
The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence required at trial, and credibility determinations are seldom crucial in deciding whether available evidence supports a reasonable belief that the person to be arrested has committed a crime. Probable cause, as the very name implies, deals with probabilities. The probable cause standard recognizes that a degree of uncertainty may exist and that an officer need not have sufficient proof to convict but must have more than a mere suspicion. The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause.
Thus, Mr. Merritt may not rely solely on his acquittal of criminal charges to support his argument that the officers did not have probable cause to arrest him.
Mr. Merritt next argues that the officers were not engaged in any official police business because they were not making an arrest, seizing property, or serving process, as required by State v. Lindsay, 388 So.2d 781 (La.1980). However, that language concerns only violations of La.R.S. 14:108, resisting an officer. As stated above, the trial court in the instant case found probable cause to arrest Mr. Merritt for disturbing the peace under La. R.S. 14:103. That statute provides in part:
A. Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:
. . . .

*491 (2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation or duty [.]
(Emphasis added.)
Although simply interfering with an investigation when the police are not making an arrest, seizing property, or serving process will not support an arrest for resisting an officer under La.R.S. 14:108, that same conduct may constitute probable cause for disturbing the peace under La.R.S. 14:103. See McDaniel v. Green, 99-1087 (La.App. 3 Cir. 12/22/99); 755 So.2d 942, writ denied, 00-200 (La.3/24/00); 758 So.2d 151. McDaniel also recognized that, although profanity may be protected speech, that language combined with the intent to deride, offend, or annoy, or to prevent the pursuit of an officer's lawful business, occupation, or duty, is sufficient for an arrest for disturbing the peace.
In McDaniel, 755 So.2d 942, a police officer stopped a pickup truck that had been identified as being involved in a bottle-throwing incident. One of the occupants of the truck became belligerent in expressing his innocence and, after ignoring instructions to be quiet, continued a verbal tirade that included profanity. Finding that this conduct prevented the officer "from performing the most basic investigation," we held that the officer had probable cause to arrest the occupant for disturbing the peace. Id. at 948.
In the instant case, the officers were engaged in a lawful search, as they had obtained Mr. Holmes' consent to search his vehicle. The trial court found, based upon a credibility call, that Mr. Merritt did use profanity within four to five feet of the area under investigation. From the record, it is also clear that Mr. Merritt ignored the officers' instructions to return to the house. Officer Way testified that Mr. Merritt distracted him from his official duty of watching the vehicle's occupants during the search. As Officer Willis explained, "[A]ny time a police officer is doing his job and somebody comes up and we have to take our attention off of the vehicle and the suspects that are in that vehicle, it puts our lives in danger[.]" We find no error in the trial court's conclusion that the officers had probable cause to arrest Mr. Merritt for disturbing the peace.
In his second assignment of error, Mr. Merritt argues that the trial court erred in finding that the Defendants were not liable for the injuries he suffered at the Oakdale police station. The trial court found Mr. Merritt failed to prove the officers pushed him, as the only evidence in support of this claim was his own "self-serving testimony." The trial court specifically stated that Mr. Merritt's credibility was "questionable" on this issue.
A court of appeal may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In Stobart v. State, through the Department of Transportation and Development, 617 So.2d 880, 882 (La.1993) (citations omitted) (emphasis added), the supreme court further explained:
[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should *492 not be disturbed upon review where conflict exists in the testimony.

In support of this assignment, Mr. Merritt points out certain inconsistencies in the officers' testimony. However, we do not find that the officers' version of the incident is "so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit" their account. Id. Accordingly, we find no error in the trial court's decision not to award damages for an alleged battery at the police station.
In his third assignment of error, Mr. Merritt argues that the trial court erred in striking his demand for punitive damages against the municipality of Oakdale in his § 1983 claim. However, we find that we need not reach this issue, as we have affirmed the trial court's dismissal of all claims.

Decree
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Kenneth Merritt.
AFFIRMED.