EMILIO M. GARZA, Circuit Judge:
This appeal arises out of the alleged use of excessive force in the arrest of Roger L. Poole (“Poole”) following a traffic stop in Shreveport, Louisiana. Poole, the Plaintiff-Appellant, appeals the district court’s grant of summary judgment for the defendants on his 42 U.S.C. § 1983 claims. We AFFIRM.
I
This case arises out of allegedly excessive force that Poole contends two officers used against him. A videotape, captured by a camera mounted on a police car, recorded most of the events underlying Poole’s claims.[1]
Corporal J. Creighton (“Creighton”), a member of the Shreveport Police Department, was not on duty on the morning of December 19, 2006. Dressed in plain clothes, he drove down Shreveport’s stretch of Interstate 20 in his personal pick-up truck. He tailgated Poole, who was driving a large truck — a semi-tractor with no trailer attached. Poole, to get Creighton off his tail, threw something at Creighton’s car, splattering it with liquid. Creighton radioed the dispatcher and requested the assistance of a marked unit. Sergeant John D. Stalnaker (“Stalnaker”) responded, first turning on his emergency lights and then, after Poole did not pull over, deploying his siren. Poole pulled his truck off the interstate into an empty lot. Stalnaker, trailed by Creighton, approached Poole’s truck.
Stalnaker ordered Poole to exit the cab of his truck. Poole complied. Poole was unable to produce proof of insurance and smelled of alcohol. Creighton led Poole to the back of Poole’s truck where he patted him down while Stalnaker investigated the inside of the cab. The officers found no weapons or contraband on Poole or in his truck. Stalnaker administered a field sobriety test, and Poole admitted that he had consumed at least half of a sixteen-ounce beer that morning. Poole passed the sobriety test. Another officer came to the scene with a citation book and confirmed that Poole did not have insurance.
During this time, Poole asserts that Creighton began to verbally threaten and challenge him. Poole continued to accuse Creighton of tailgating him. It is undisputed that amidst this tension, Poole raised his hands at Creighton. Poole claims that he raised his hands with both palms open, as an act of surrender. He concedes that he invited Creighton to hit him — but claims he did so sarcastically. Creighton exclaimed in response, “He just gave me consent to hit him.”
After this exchange, Stalnaker instructed Poole to turn around. Creighton, who was standing closer to Poole, grabbed Poole’s left arm and attempted to place it behind his back. Stalnaker tried to get Poole’s right arm and again told him to *626 turn around. Poole backed away from the officers and said, “Wait a minute. What are you doing?” The two officers twisted Poole around and pressed him against the side of his truck.
Creighton held Poole’s left arm behind his back in a way that Poole claimed was very painful. Poole claims that Creighton continued to hold his arm in place while Stalnaker tasered him repeatedly.[2] Stalnaker then reached for Poole’s right arm, but Poole tucked it into his chest and verbally and physically resisted Stalnaker’s repeated stern commands for Poole to give it to him. Stalnaker briefly used his taser on Poole, which caused Creighton and Stalnaker to momentarily lose control of Poole. Poole climbed onto the fifth wheel of his truck and laid on his back, screaming that the officers had broken his arm. Poole claims that he does not remember how he ended up on the fifth wheel.
The two officers moved from the side of the truck to the back. Creighton tried to grab Poole, who continued to resist him by kicking him. Creighton held Poole in place, and Stalnaker then flipped Poole onto the ground, and yanked his arms to handcuff him. His left arm offered no resistance. It is undisputed that this was the first time that the officers understood that Poole’s elbow had been dislocated. They immediately called for medical assistance. While they waited for an ambulance to arrive, Poole continued to yell at the officers and squirm on the ground, but the officers took no further action to subdue him. As a result of his injury, Poole has undergone multiple surgeries. His left arm and hand suffer permanent disabilities.
Poole sued Stalnaker and Creighton, as well as the City of Shreveport (“the City”), and former chief of police Mike VanSant (“VanSant”) (collectively, the “Defendants”), seeking damages for constitutional violations under 42 U.S.C. § 1983. Poole specifically alleged that (1) Stalnaker and Creighton used excessive force in violation of the Fourth and Fourteenth Amendments and (2) the City and VanSant failed to train and supervise Creighton and Stalnaker on the use of force and had failed to establish and enforce policies related to the use of force, traffic stops, or the conduct of off-duty officers. He also raised state law claims. Importantly, Poole alleged only that officers used excessive force in arresting him.
Defendants moved for summary judgment. Poole abandoned his state law claims and his constitutional claim against VanSant and the City to the extent he alleged that they failed to train Stalnaker and Creighton on the use of force. The district court granted Defendants’ motion. First, the district court granted Creighton and Stalnaker qualified immunity on Poole’s excessive force claim because Poole failed to show that his injuries resulted from excessive force that was clearly unreasonable given the circumstances of his arrest. And second, finding no genuine dispute over material facts with regard to whether VanSant and the City were deliberately indifferent to the rights of citizens, the district court also granted summary judgment on Poole’s claim that they had failed to enforce policies regulating the investigation and detention of suspects by off-duty officers. The district court dismissed Poole’s claims and entered judgment for the Defendants. Poole appealed.
II
On appeal, Poole contends that the district court erred in (1) granting Creighton *627 and Stalnaker qualified immunity on his excessive force claim and (2) dismissing his constitutional claim against VanSant and the City based on their failure to implement a policy, which, he contends, caused his injury.
We review the district court’s summary judgment decision de novo, applying the same standards as the district court. Burge v. Parish of St. Tammany, 187 F.3d 452, 464 (5th Cir.1999). Summary judgment is appropriate if “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.CrvP. 56(a). A dispute is “genuine” if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir.2000). A fact issue is “material” if its resolution could affect the outcome of the action. Id. When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to Poole, the nonmoving party. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 454 (5th Cir.2005). “Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.” Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011). “A court of appeals need not rely on the plaintiffs description of the facts where the record discredits that description but should instead consider ‘the facts in the light depicted by the videotape.’ ” Id. (quoting Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).
A
Poole first contends that the district court erred in granting Creighton and Stalnaker summary judgment on his excessive force claims based on the affirmative defense of qualified immunity. Public officials such as Creighton and Stalnaker are entitled to qualified immunity on summary judgment unless (1) Poole has “adduced sufficient evidence to raise a genuine [dispute] of material fact suggesting [the officers’] conduct violated an actual constitutional right,” and (2) the officers’ “actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.” Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008). “Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.” Id. This standard, even on summary judgment, “gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.” Id. (internal quotation marks omitted).
The parties do not dispute that the Fourth Amendment right to be free from excessive force during a seizure is clearly established. See Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir.2009) (per curiam) (explaining that an arrestee had a clearly established right to be free from excessive force and that it was clearly established that the force officers could use in her arrest depended on the circumstances). With regard to this right, the Supreme Court has explained: *628 Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citations omitted). “Excessive force claims are [thus] necessarily fact-intensive” and “dependí ] on the facts and circumstances of each particular case.” Deville, 567 F.3d at 167 (internal quotation marks omitted) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).
*627 [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because “[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,” however, its proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.
*628 Crucially, this analysis must be objective: To make out a Fourth Amendment violation, let alone one that violates clearly established law, “the question is whether the officer’s actions are ‘objectively reasonable’ in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.” Graham, 490 U.S. at 397, 109 S.Ct. 1865. We must evaluate an officer’s use of force “from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Id. at 396,109 S.Ct. 1865. Any “evil intentions” motivating an officer’s objectively reasonable use of force “will not make a Fourth Amendment violation.”[3] Id. at 397, 109 S.Ct. 1865.
To overcome the officers’ claim of qualified immunity on his claim of excessive force, Poole must show “(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.” Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir.2009); see Deville, 567 F.3d at 167 (addressing simultaneously the questions of whether the force was “excessive” or “unreasonable”). Within this qualified immunity inquiry, the parties dispute only whether Stalnaker’s and Creighton’s respective uses of force were clearly excessive and clearly unreasonable. These inquiries are often intertwined. See Deville, 567 F.3d at 167 (engaging these questions simultaneously). In determining whether the use of force was clearly excessive and clearly unreasonable, we evaluate each officer’s actions separately, to the extent possible. See Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir.2007) (holding that each officer’s individual actions should be considered in determining whether qualified immunity applies).
1
The district court held that Poole failed to show that his injury resulted from clearly unreasonable excessive force based on the following reasons: (1) the officers were presented with a suspect who had been driving recklessly, smelled of alcohol, admitted to throwing liquid out of his truck with the intention of striking another vehicle, and confessed to drinking a beer before driving; (2) Poole raised his hands at an officer and actively resisted arrest; (3) the officers tailored the use of force to Poole’s increasing resistance, beginning first with verbal commands, then physical force, and, finally, use of a taser; (4) Stalnaker’s quick application and removal of the taser indicates his effort to minimize Poole’s injury; and (5) after subduing Poole, the officers recognized that he was injured and called for medical assistance. The district court reasoned that in light of the circumstances this case presents, the officers’ actions were neither clearly unreasonable nor excessive and rejected the importance of the events that triggered Poole’s arrest.
Poole asserts that Creighton’s and Stalnaker’s use of force was unnecessary and unreasonable given the minimal severity of his crime and the minimal level of threat that Poole posed both during the traffic *629 stop and when his elbow was injured, and because Poole did not actively resist arrest once force was initiated. Defendants respond that neither officer’s actions were objectively excessive or clearly unreasonable.
2
a
Mindful that we must view the evidence in a light most favorable to Poole, see Cooper Tire, 423 F.3d at 454, we agree with the Defendants that neither officer’s actions were objectively excessive or clearly unreasonable. Poole does not discuss the officers’ actions separately. His claim of excessive force centers on Creighton’s and Stalnaker’s combined actions; Poole particularly focuses his arguments on Creighton’s actions. Regardless, those actions are not enough to support a claim of excessive force against either officer standing alone. We reiterate that Poole does not contest the legality of his arrest. Thus, in addressing the officers’ claims of qualified immunity, our focus is necessarily on the force used during his arrest.
Viewing the evidence in the light most favorable to Poole — evidence which includes a videotape that captures much of the dispute underlying Poole’s claims — we conclude that the force the officers used in arresting him was not objectively excessive or clearly unreasonable. It is undisputed that Stalnaker repeatedly commanded Poole to turn around and give up his right arm. It is undisputed that Poole did not do so. Poole’s resistance was immediate and persistent. Stalnaker responded with verbal commands and attempted to grab Poole’s arm, before resorting to a taser, which, the video reveals, he applied and withdrew very quickly. Creighton pinned Poole down when he refused to comply with Stalnaker’s commands, and Stalnaker twisted Poole to the ground after Poole kicked and screamed at Creighton for reasons that were unclear. It was not until the officers restrained Poole that they realized he was injured; they immediately called for help.
Viewed objectively, Stalnaker and Creighton responded with “measured and ascending” actions that corresponded to Poole’s escalating verbal and physical resistance. See Galvan v. City of San Antonio, 435 Fed.Appx. 309, 311 (5th Cir.2010) (explaining that the use of force was reasonable when it involved “measured and ascending responses” to a plaintiffs noncompliance). Poole’s suggestion that a desire to avenge a personal insult motivated Creighton’s actions makes no difference when viewed against the backdrop of his broader interaction with the two officers. See Graham, 490 U.S. at 397, 109 S.Ct. 1865 (“An officer’s evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force.”). This situation was “tense, uncertain, and rapidly evolving,” and the officers’ decision to use force to restrain Poole was objectively reasonable. Graham, 490 U.S. at 396, 109 S.Ct. 1865. Because Poole, upon refusing to turn around and be handcuffed, posed an “immediate threat to the safety of the officers” and “actively resisted]” the officers’ instructions, the use of force was not “clearly excessive.” See Deville, 567 F.3d at 167.
Because Poole has failed to show that Creighton’s and Stalnaker’s use of force was objectively excessive or clearly unreasonable, the officers are entitled to qualified immunity on Poole’s excessive force claims.[4]
*630 b
The dissent has offered a classic example of what the Supreme Court has asked us to avoid in analyzing qualified immunity challenges. First, the dissenting opinion unmoors its analysis from the appropriate legal principles. See Ontiveros, 564 F.3d at 382. Rather than focusing its analysis on Creighton’s entitlement to qualified immunity, the dissent seemingly analyzes the merits of Poole’s excessive force claim. Second, even in reaching the merits of Poole’s claim, the dissent misapplies the Supreme Court’s directive in Graham to engage in an objective analysis, focused on the use of force during arrest, in favor of an analysis infused with subjective, posthoc assessments of the facts or centered on facts preceding Poole’s arrest. The dissent also relies on distinguishable circuit case law. Interweaving these errors are “facts” that are either irrelevant or which are directly contradicted by videotape evidence.
It bears repeating that while we view all facts in a light most favorable to Poole, the burden remains on Poole “to negate the [qualified immunity] defense once properly raised.” Brumfield, 551 F.3d at 326. Even on summary judgment, we cannot ignore that qualified immunity “gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.” Id. (internal quotation marks omitted). The Supreme Court has instructed that our review is necessarily objective — reasonableness is our touchstone, and we lack any benefit of 20/20 hindsight. See Graham, 490 U.S. at 396-97, 109 S.Ct. 1865. Officers’ subjective intent is irrelevant. See id. at 397, 109 S.Ct. 1865. Lastly, our focus is not on the merits of Poole’s claim, but on Creighton’s and Stalnaker’s entitlement to qualified immunity. See generally Ontiveros, 564 F.3d at 382.
In spite of agreeing that these principles apply, the dissenting opinion makes its first mistake by narrowly focusing on Graham to effectively evaluate the merits of Poole’s excessive force claim instead of the validity of Creighton’s claim to qualified immunity. Graham, however, “expressed no view on [qualified immunity’s] proper application.” Graham, 490 U.S. at 399 n. 12, 109 S.Ct. 1865. Instead, our accepted qualified immunity analysis in the excessive force context focuses on “(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.” See, e.g., Ontiveros, 564 F.3d at 382.
Next, the dissent, even in applying Graham, disregards the touchstone of objectivity and casts its understanding of the events as they unfolded in a subjective light. Evidence of these misjudgments is the dissent’s omissions of key events as depicted by the videotape, in favor of Poole’s often contradictory self-serving version of events. The Supreme Court *631 has provided the courts with clear instruction on how we are to regard videotape evidence in summary judgment review:
When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
... [Where a] Respondent’s version of events is so utterly discredited by the record that no reasonable jury could have believed him[, t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.
Scott, 550 U.S. at 380-81, 127 S.Ct. 1769. This court has construed the Supreme Court’s instruction to require courts to reject a “plaintiffs description of the facts where the record discredits that description [and] instead consider ‘the facts in the light depicted by the videotape.’ ” Camaby, 636 F.3d at 187 (quoting Scott, 550 U.S. at 381,127 S.Ct. 1769).
Yet the dissent repeatedly ignores the Supreme Court’s instruction. For example, the dissent accepts Poole’s assertion that he did not actively resist the officers’ commands, an assertion which is plainly contradicted by the videotape.[5] The videotape shows Poole, in response to Stalnaker’s command to turn around and Creighton’s attempt to handcuff him, backing away from the officers and then actively resisting their efforts to turn him around. The dissent attempts to characterize his resistance as “merely asking the basis of the instruction,” and seemingly creates out of whole cloth a new legal rule that a defendant may resist arrest for “ten seconds” if he believes he has reason to do so.[6] By repeatedly failing to give sufficient weight to the videotape evidence, the dissent grants Poole’s version of events undue weight, see Scott, 550 U.S. at 381, 127 S.Ct. 1769, and in turn fails to consider Poole’s actions from the perspective of a *632 reasonable officer. See Graham, 490 U.S. at 396-97,109 S.Ct. 1865.
To bolster these errors, the dissent invokes this circuit’s cases, both precedential and unpublished, and stretches them beyond recognizable limits. None of the dissent’s citations persuade us that our decision to affirm the district court’s grant of qualified immunity is legally wrong or that we have misunderstood material facts. The dissent relies on Goodson v. City of Corpus Christi, 202 F.3d 730 (5th Cir.2000), in which this court, on summary judgment review, declined to extend qualified immunity to two officers on an individual’s excessive force claim. The court concluded that because the individual “suffered a broken shoulder as a result of being tackled by [the officers], who lacked reasonable suspicion to detain or frisk him and from whom he was not fleeingf,] [a] fact issue therefore exists as to the objective reasonableness of the force used.” Id. at 740. Driving this analysis, however, were the court’s conclusions that material issues remained as to whether the officers had reasonable suspicion to detain Good-son or probable cause to arrest him. See id. at 736^40. Here, Poole has not contested the reasonableness of his seizure; he only disputes the amount of force used. Goodson thus lacks analytical force in assessing the reasonableness of Creighton’s actions.
The dissent also cites to a recent unpublished case, Anderson v. McCaleb, — Fed.Appx. -, No. 11-40237, 2012 WL 2299459 (5th Cir. June 15, 2012), in which this court reversed the district court’s grant of summary judgment on a plaintiffs excessive force claim because “the magistrate judge erred in rejecting [the plaintiffs] account of his injuries.” Specifically, the magistrate concluded, based on medical records, that a fracture was an old injury, even though the medical records were “silent as to the cause of the fracture and do not suggest that [the plaintiff] mentioned it was an old injury” and in fact revealed a range of other injuries consistent with his account. Id. at-, 2012 WL 2299459 at *4. By rejecting the plaintiffs injuries, this court explained that the magistrate overlooked “some contested evidence of significant injury to support the factual assertions of excessive force.” Id. at -, 2012 WL 2299459 at *5. The magistrate’s improper assessment of record evidence negated the “injury” element of the Fourth Amendment excessive force inquiry and thus tainted its evaluation of the reasonableness of the officers’ actions. Whether Creighton or Stalnaker injured Poole is not in dispute; we thus fail to see Anderson’s persuasive value here.[7]
*633 The dissent effectively turns the qualified immunity analysis on its head by trying to contort this inquiry into one that evaluates the subjective merits of an officer’s actions. The doctrine of qualified immunity, however, “shield[s] [officers] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.” Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Where a plaintiff resists as Poole did, and officers react with force that corresponds to the resistance, as both Stalnaker and Creighton did, it cannot be said that the officers’ force is objectively excessive or clearly unreasonable; the Supreme Court therefore requires qualified immunity. See id. Irrespective of the dissent’s subjective evaluation of this excessive force case which indisputably resulted in a serious injury, summary judgment does not require us to accept absurd factual allegations that are contradicted by videotape evidence.[8] See Scott, 550 U.S. at 380-81, 127 S.Ct. 1769; Carnaby, 636 F.3d at 187. Instead, it demands that we ask, ultimately, whether Poole has shown that Stalnaker’s and Creighton’s actions were objectively excessive and clearly unreasonable in light of Fourth Amendment law. See Ontiveros, 564 F.3d at 382. Neither Poole nor the dissent persuade us that he has.[9]
B
Poole next contends that genuine issues of material fact preclude summary judgment on his claim that the City and VanSant failed to establish a policy implementing or enforcing Louisiana’s policy against the use of public office for private gain. See La. Rev. Stat. Ann. § 42:1101(B) (declaring as Louisiana policy “that public office and employment not be used for private gain.”).
A § 1983 claim for the failure to establish a policy exists only where the “policies are the moving force [behind] the constitu *634 tional violation.” City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting Monell v. Dep’t of Social Servs. of City of N.Y., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). “Only where a municipality’s failure to [establish a policy] in a relevant respect evidences a ‘deliberate indifference’ to the rights of its inhabitants can such a shortcoming be properly thought of as a city ‘policy or custom’ that is actionable under § 1983.” Id. (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018). “Deliberate indifference is a stringent standard of fault” and requires a showing of “more than negligence or even gross negligence.” Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir.2005) (quoting City of Canton, 489 U.S. at 388, 109 S.Ct. 1197).
The district court held that Poole failed to demonstrate that the City or VanSant acted with deliberate indifference toward the rights of citizens. It emphasized that the Shreveport Police Department has policies regulating the use of force and traffic stops, which are similar to the International Association of Chiefs of Police model policies, and, moreover, that the Police Department’s training program exceeds Louisiana’s minimum requirements. The district court further explained that Poole provides no evidence of a pattern, or even another single incident, of alleged excessive force by off-duty officers and, further, no evidence to rebut the Defendants’ expert’s opinion that “[t]he administration of the Shreveport Police Department ... appears to be reasonable and falls well within the generally recognized guidelines of the law enforcement community.”
Poole maintains that the policies and practices of the Shreveport Police Department and VanSant exhibited deliberate indifference to Poole’s constitutional right to be free from force.[10] He stresses that the Department and VanSant failed to properly train Department employees in circumstances where an employee’s public office might come in conflict with his private disputes.
Poole invokes only Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979), to support his claim. In Cheatham, the Louisiana Supreme Court held that two off-duty police officers could be held liable in a wrongful death action by the widow of a man who was killed in a personal dispute with the officers. Id. at 379. While Cheatham discusses, for state law purposes, the complications inherent in altercations between off-duty police officers and private citizens, Poole does not explain how Cheatham supports his failure-to-train claim. Poole must show “deliberate indifference” on the part of the City and VanSant. City of Canton, 489 U.S. at 389,109 S.Ct. 1197. But Poole merely presents testimony from the officers that they were unaware of the Louisiana Code article that discourages the use of public office for private gain. Poole has simply alleged that the City failed to take “minimal precautions,” and that this failure evidenced manifest disregard for its citizens’ rights. He does not, however, support his conclusory allegations with a specific policy or a single other incident in which the City’s failure to train led to the use of excessive force by police officers. See Burge, 187 F.3d at 471-72 (rejecting plaintiffs failure-to-train claim because “[t]here was no evidence of a single instance, much less a pattern, of [ ] violations”).
Poole has not met his summary judgment burden.
*635 III
For these reasons, we AFFIRM.

. This videotape significantly aids our understanding of these events. See Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (instructing that courts should view purported facts in dispute "in the light depicted by the videotape.”). Neither the tape’s admissibility nor its contents are in dispute.

. The men were briefly off camera during the time that Poole claims Stalnaker tased him multiple times. During this time, Poole can be heard yelling loudly.

. The dissent emphasizes facts that may have been relevant to a qualified immunity analysis in an unconstitutional arrest claim — a claim Poole has not raised. Thus, most of the facts that the dissent discusses are irrelevant to the excessive force qualified immunity analysis.

. Poole's and the dissent's attempts to compare the facts of this case to those underlying this court’s decision in Deville v. Marcantel, 567 F.3d 156 (5th Cir.2009) are unpersuasive. In Deville, the plaintiff had been pulled over for exceeding the speed limit by ten miles per hour. Id. at 161. A second officer arrived on *630 the scene, and when the plaintiff refused to roll down the window until her husband arrived, the officer broke the window with his flashlight, dragged the plaintiff out of the car, and threw her up against the car. Id. at 162. This court reversed the district court's grant of summary judgment in favor of the officer on the plaintiff's excessive force claims. Id. at 167. Poole contends that we should do the same in this case because he, like the plaintiff in Deville, was stopped for a minor traffic violation and posed no threat to the officers. Poole’s case is not like Deville, however. The Deville court reasoned that the officer "engaged in very little, if any, negotiation with [the plaintiff]' — and [] that he instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle.” Id. at 168. In contrast, the officers in this case decided to place Poole under arrest only after he acted in a way that they reasonably perceived as threatening, and then used further force as necessary when Poole did not submit to the arrest.

. The dissent riddles its analysis with facts like these that are overly sympathetic to Poole and controverted by the videotape. For example, the dissent assumes that there was "no indication that he intended to flee,” a statement that flies in the face of Poole’s continued escalating resistance. More generally, the dissent focuses on seemingly disputed events taking place before Poole’s arrest that have no bearing on the legality of the force Creighton used in assisting Stalnaker with effecting Poole’s arrest and focuses on Poole’s subjective perceptions instead of the legality of Creighton’s and Stalnaker’s use of force.

. The application of force to effect an arrest is not a parlor game in which the arresting officers must consider the arrestee's sensibilities. Arrests are inherently dangerous and can escalate precipitously if the arrestee is not overcome immediately. What the dissent fails to apperceive is that police officers will never know beforehand when such escalation will occur. Cf. Olivarez v. State, No. 07-09-00223-CR, 2010 WL 2756917, at *1 (Tex. App. — Amarillo July 13, 2010) (detailing an arrest, taking place during a traffic stop, which got out of control and resulted in the arrestee stealing a taser from the officer and then using it against him); King v. State, 161 S.W.3d 264, 265 (Tex.App.—Texarkana 2005, pet. ref’d) (recounting that when an officer attempted to arrest a man during a traffic stop, the man resisted and eventually gained control of the officer’s chemical dispensing device and sprayed the officer before the officer was able to subdue him); Merritt v. City of Oakdale, 01-1533 (La.App. 3d Cir.2002); 817 So.2d 487, 488-89 (explaining that a mace can went off during struggle between officer and arrestee and hit the officer rather than the arrestee). Here, the escalation was minimal; Creighton and Stalnaker applied only the amount of force necessary to subdue Poole. See Collier v. Montgomery, 569 F.3d 214, 218-19 (5th Cir.2009) ("'The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible.’ ”) (quoting (Bush v. Strain, 513 F.3d 492, 501 (5th Cir.2008))).

. The dissent's reliance on Staten v. Tatom, 465 Fed.Appx. 353 (5th Cir.2012) (unpublished), and Bush v. Strain, 513 F.3d 492 (5th Cir.2008) yield similar results. In Staten, this court reversed summary judgment and denied officers qualified immunity on an excessive force claim because a number of key facts remained in dispute, including whether the plaintiff resisted and the amount of force the defendant used at each encounter, which needed to be resolved before the court could evaluate whether the defendant’s use of force was reasonable. 465 Fed.Appx. at 358-61. Neither of these two threshold facts are realistically in dispute here; thus, Staten is not applicable. See id. at 359-61. Bush similarly involved the question of when a plaintiff ceased to resist arrest that is lacking in this case. See 513 F.3d at 498-89.
The dissent also maintains that Galvan is distinguishable. In Galvan, this court concluded that the force used by officers was reasonable where police “were confronted with a rapidly evolving, volatile situation”; "reacted with measured and ascending responses — verbal warnings, pepper spray, hand- and arm-manipulation techniques, and then the use of a Taser”; and "did not use force until [the plaintiff’s husband] attacked [an officer].” 435 Fed.Appx. at 311. The dissent contends that Galvan does not apply here because Stalnaker pulled Poole over for a trivial traffic crime; Poole was cooperative; Stalnaker told Poole to turn around a single time before he and Creighton immediately *633 pinned Poole against the truck; Poole never threw anything at Creighton or Stalnaker, nor did he tackle them, nor did he engage in a ground struggle; and Creighton proceeded to manipulate and break Poole’s arm. Galvan is only distinguishable because it involved escalating resistance that resulted in increasing amounts of force, resulting in the plaintiff’s husband's death; even on those more extreme facts, the court nevertheless concluded that officers’ use of force was not excessive. Although in Galvan, the officers’ use of force was greater to correspond to the greater amount of resistance the plaintiff's husband offered, like Galvan, the officers’ use of force here similarly corresponded to the resistance offered by Poole.

. Further, seriousness of injury is not conclusive of the unreasonableness of officers’ actions. See Galvan, 435 Fed.Appx. at 311 (no excessive force even where arrestee died).

. We also disagree with the dissenting opinion’s conclusion that the alleged violation here was clearly established. The cases the dissent cites in support of this conclusion, which all focus on clear cases of excessive force, do not put Creighton and Stalnaker on notice that their use of force here amounted to a constitutional violation. See Brown v. Long Beach Police Dep’t, 105 Fed.Appx. 549, 550 (5th Cir.2004) (“As the facts are not in dispute, it does not appear beyond doubt that [the plaintiff] will be unable to prove the elements of an excessive force claim.’’); Goodson, 202 F.3d at 740 (“A fact issue therefore exists as to the objective reasonableness of the force used.”); Randell v. Davis, 986 F.2d 1419, No. 92-1695, 1993 WL 58772, at *3 (5th Cir. 1993) (per curiam) (unpublished) ("[The] evidence reveals that genuine issues of material fact remain regarding the use of excessive force.”).
Even in assessing whether this alleged violation was clearly established, the dissent neglects to address whether the officers’ actions were objectively unreasonable in light of what the dissent characterizes as clearly established law. See Brumfield, 551 F.3d at 326. The dissenting opinion’s failure to fully address the qualified immunity inquiry exposes the errors inherent in its conclusions.

. The district court rejected Poole's claims against VanSant in his official and individual capacity. On appeal, Poole only disputes the district court’s judgment to the extent it dismissed an official capacity claim.