# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20213

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2018

Lyle W. Cayce
Clerk

JAY MAZOCH,

Plaintiff - Appellant

v.

A. CARRIZALES; CITY OF STAFFORD, TEXAS,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2893

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

PER CURIAM:*

Jay Mazoch pled guilty to aggravated assault against two police officers. He had trapped their arms in the window of his vehicle, causing them injury when he drove a short distance, dragging them along. One of the officers, Ann Carrizales, shot Mazoch during the incident. Mazoch sued Carrizales and the City of Stafford, Texas under 42 U.S.C. § 1983. The district court granted summary judgment to both defendants. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20213

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of October 14, 2012, Officer Ann Carrizales and Detective Pauline Fitzgerald of the Stafford, Texas Police Department were interviewing witnesses to a possible gang-related shooting. They were conducting the interviews while standing in a residential cul-de-sac. Plaintiff Jay Mazoch, 20 years old, drove his vehicle into the cul-de-sac and stopped near Detective Fitzgerald. He rolled down his window and asked why the officers were there.

According to Officer Carrizales, Mazoch ignored repeated instructions to leave the area before he eventually drove further into the cul-de-sac, turned around, and drove back toward the officers. Mazoch then again stopped near the officers. The two officers walked up to the driver's side of the vehicle. Carrizales stated she believed Mazoch "was now being detained for a brief investigatory detention." After Mazoch ignored several orders to turn off his vehicle, Carrizales reached through the vehicle's window to unlock the door.

As Carrizales reached into the car, Mazoch rolled up the window, trapping the officer's arm. Detective Fitzgerald stepped closer and attempted to assist by also reaching through the narrow opening above the window. Mazoch alleged that during this time, the officers began using their now-trapped arms to strike him in the face with metal pistol magazines.

At this point, Mazoch drove the vehicle forward with the officers' arms still trapped in the window. He stopped after moving about 20 feet. The vehicle's movement with the officers' arms trapped shattered the window and caused the officers to fall onto the pavement. Photographs later taken of Carrizales show extensive injuries to her arms and hands. Mazoch contends that after stopping, he made no additional movements and kept his hands on the steering wheel.

No. 17-20213

Carrizales alleged that her fall left her perhaps 10–15 feet to the front and side of the vehicle. She could no longer see Detective Fitzgerald and feared the officer was underneath Mazoch's car. Carrizales stood up, drew her handgun, and fired a single shot at Mazoch, striking him in the nose. Mazoch alleges that before firing the shot, Carrizales quickly moved to a position directly in front of the vehicle. All three individuals were transported to the hospital for treatment.

A Fort Bend County grand jury indicted Mazoch in December 2012 for two counts of aggravated assault on a public servant. Mazoch pled guilty to both charges in January 2016. As part of his plea, Mazoch admitted to the facts of the indictment, which described his use of a motor vehicle to cause bodily injury to the officers while their arms were trapped by the window. The trial court decided that the interests of justice would be "served by deferring further proceedings without entering an adjudication of guilt pursuant to Article 42.12 of the Texas Code of Criminal Procedure." The court therefore deferred adjudication pending Mazoch's successful completion of probation.

In October 2014, which was between the dates of his indictment and his guilty plea, Mazoch filed a Section 1983 suit against Officer Carrizales and the City of Stafford in the United States District Court for the Southern District of Texas. He alleged that Officer Carrizales used excessive force and that the City of Stafford ratified her action. In April 2015, the district court abated the civil case pending disposition of the criminal charges against Mazoch. Following Mazoch's deferred adjudication, Carrizales and the City of Stafford filed motions for summary judgment on multiple grounds. The district court determined that Carrizales was entitled to qualified immunity. Judgment was entered in favor of both Carrizales and the City of Stafford. Mazoch timely appealed.

3

No. 17-20213

DISCUSSION

We review a district court's grant of a motion for summary judgment *de novo*.  *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017).  Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A qualified immunity defense alters the usual summary judgment burden of proof."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Id.*  "[W]e view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Trammell*, 868 F.3d at 338 (quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)).  We may affirm a grant of summary judgment on any grounds supported by the record, even if the district court did not rely on those grounds in making its determination.  *Ballard v. Burton*, 444 F.3d 391, 401–02 (5th Cir. 2006).

I.   *Qualified Immunity*

We look first to whether the district court erred in granting qualified immunity to Officer Carrizales.  "The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation."  *Brown*, 623 F.3d at 253.  Here, the district court determined that qualified immunity was appropriate but failed to state whether its holding was based on the absence of a constitutional violation or whether such a right was not clearly established.  We may affirm the district court's grant of summary judgment "on any ground supported by the record, even if it was not the basis for the judgment."  *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016)

4

(quoting *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 878 (5th Cir. 2002)). Our *de novo* review will allow us to affirm if we conclude immunity is proper under either prong.

Mazoch argues that Officer Carrizales violated his Fourth Amendment rights by using excessive force. The Fourth Amendment contains the "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Trammell*, 868 F.3d at 340 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

The only dispute on this issue is whether Officer Carrizales used clearly unreasonable excessive force against Mazoch. Such a determination "'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We are to judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

In challenging the reasonableness of Officer Carrizales's use of force, Mazoch first argues that no crime was occurring when Carrizales fired the shot, as the assault against the officers had ended. He cites his criminal indictment to argue that the only relevant crime in our Fourth Amendment analysis was the aggravated assault that occurred when he dragged the two officers pinned by his window. Because his indictment refers only to those facts, he argues that no crime was occurring after the officers fell to the pavement. For purposes of qualified immunity, though, there is no basis to

limit our reasonableness inquiry to what is stated in a criminal indictment involving the same incident. On the contrary, we are concerned with the severity of the crime from the perspective of a reasonable officer on the scene. *Id.* When assessing the severity of the crime, we must consider actions that a reasonable officer could perceive to be a crime regardless of whether those actions were later the basis for a prosecution.

Mazoch's criminal indictment had the benefit of hindsight that we must avoid in our objective analysis. *See id.* The indictment looked to past events to determine whether Mazoch committed a crime. Our Fourth Amendment inquiry, on the other hand, requires us to view from the perspective of an officer in real-time. *See id.* If Officer Carrizales could reasonably believe that the assault was ongoing, it does not matter whether the indictment incorporated Mazoch's actions at the time the shot was fired. In this regard, we have previously held that vehicle-inflicted harm against law enforcement is "severe." *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 412 (5th Cir. 2009).

Mazoch also argues that at the time of the shot, the assault had ended. Officer Carrizales had fallen away from the vehicle, the vehicle was stopped, his hands were visible, and he was not moving. In arguing that such facts indicate excessive force, Mazoch looks primarily to three cases. In one, an officer was involved in a chase of a suspected drunk driver who stopped his vehicle in a cul-de-sac. *Fraire v. City of Arlington*, 957 F.2d 1268, 1275 (5th Cir. 1992). The pursuing officer exited his vehicle; the suspect sped towards the officer despite commands to halt. *Id.* The officer fired a single shot that killed the driver. *Id.* We held that the question was not "whether [the officer's] actions were grossly disproportionate to the need for action in arresting [the suspect] for a misdemeanor offense, but whether his actions were grossly disproportionate to the need to defend himself from an attack." *Id.* The totality of circumstances reasonably signaled the officer that he was in imminent

danger as the suspect's vehicle approached. *Id.* The suspect Fraire had attempted to evade the officer, drove his vehicle recklessly through a neighborhood, caused damage to his vehicle, and ignored numerous commands. *Id.* Although it was true the officer would have been struck but for firing the shot, the reasonableness determination drew from the officer's entire interaction with the suspect. *See id.* Nothing in *Fraire* stands for the proposition that officers may fire on a vehicle only if they are about to be struck.

Consistent with our holding in *Fraire*, Carrizales could reasonably consider that Mazoch used his vehicle as a weapon against her and Detective Fitzgerald just seconds before, had caused damage to the vehicle in the process, had injured the officers, and was still in control of that same vehicle that was running and capable of being used to renew the assault at any second. She was also reasonably concerned the other officer might be at even greater risk than was she, depending on where that officer had fallen.

In another precedent that Mazoch cites, an officer observed a drug transaction in a parking lot. *Young v. City of Killeen*, 775 F.2d 1349, 1351 (5th Cir. 1985). The officer blocked the suspect's vehicle with his own and approached the driver's side on foot, ordering the occupants to exit. *Id.* At that moment, the driver appeared to reach for something under the seat and, fearing that the suspect was reaching for a weapon, the officer fatally shot the driver. *Id.* We held that there was no Fourth Amendment violation. *Id.* at 1353. Mazoch argues that *Young* means that deadly force in such a situation is only permitted where the suspect's hands suddenly disappear from view. Because Mazoch's hands remained visible as he was shot, he argues that Carrizales used excessive force.

The problem with this argument is that Mazoch was using the vehicle itself as a weapon. The officer in *Young* was concerned about the driver's

No. 17-20213

reaching for a weapon, while Mazoch's hands were still in control of the weapon he had just used in an assault. The two cases thus are conceptually similar.

Finally, Mazoch cites to a case in which the officer attempted to stop a suspected stolen car. *Lytle*, 560 F.3d at 407. At one point in the chase, the suspect collided with another vehicle. *Id.* The officer exited his vehicle 12–15 feet to the rear of the suspect's stopped vehicle. *Id.* It was undisputed that the officer fired two shots at the vehicle, killing a passenger, but very much in dispute was when the shots were fired. *Id.* at 407–08. The chase resumed, and the suspect was apprehended. *Id.* at 408. Because we viewed the facts in the light most favorable to the plaintiff, we considered the plaintiff's version of the encounter. He asserted that his vehicle was already going away from the officer at a distance of four houses when the shots were fired. *Id.* at 408. We rejected the officer's argument that the vehicle posed the same danger regardless of whether it was a few feet away or "four houses down the block." *Id.* at 412. "It is unclear," we held, "how firing at the back of a fleeing vehicle some distance away was a reasonable method of addressing the threat." *Id.*

Mazoch focuses on our language in *Lytle* discussing the time after the vehicle backed up toward the officer and the time of the shots. *Id.* at 414. In *Lytle*, we distinguished a case where an officer did not use excessive force when he fired on a vehicle immediately after it struck him. *Id.* at 413–14 (citing *Hathaway v. Bazany*, 507 F.3d 312, 322 (5th Cir. 2007)). We described how *Hathaway* turned on whether the transpired time "was insufficient for the officer to perceive 'new information indicating the threat was past.'" *Id.* at 414 (quoting *Hathaway*, 507 F.3d at 322). Viewing the facts favorably to the plaintiff, we found that the time between when the vehicle began to accelerate in the opposite direction and the shots' being fired "could have been anywhere from three to ten seconds, perhaps even more." *Id.* We therefore concluded

8

"that sufficient time might have passed for [the officer] to perceive that the threat to him had ceased." *Id.*

As in *Hathaway*, we conclude that here the length of time between the assault and the gunshot "was insufficient for the officer to perceive 'new information indicating the threat was past.'" *Id.* (quoting *Hathaway*, 507 F.3d at 322). Even when viewing the facts in the light most favorable to Mazoch, we find that Officer Carrizales faced a situation in which her partner was out of sight, possibly under the still-running vehicle controlled by the same person who had placed the officers in potentially grave danger just seconds before. Given that both Mazoch and Carrizales could not see Detective Fitzgerald, Carrizales was in a substantially different position than the officer in *Lytle*. From her perspective, if Detective Fitzgerald was now underneath Mazoch's vehicle, then any subsequent movement of the vehicle could have resulted in severe harm or death to Fitzgerald.

Mazoch fails to meet his burden in demonstrating that Officer Carrizales used excessive force. As in *Hathaway*, because we conclude that Carrizales failed to violate Mazoch's constitutional rights, "we have no call to reach the second part of the qualified immunity analysis." 507 F.3d at 320. Further, because there is no underlying constitutional violation, the City of Stafford also cannot be held liable under a ratification theory. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

AFFIRMED.