# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10132
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 21, 2017

Lyle W. Cayce
Clerk

JOSE ESCARCEGA,

      Plaintiff - Appellant

v.

OFFICER MICHAEL JORDAN; OFFICER TYE EDWARDS,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:15-CV-237

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Jose Escarcega appeals the district court's grant of summary judgment on the basis of qualified immunity in favor of Defendants–Appellees Officers Michael Jordan and Tye Edwards. Escarcega alleges that Jordan and Edwards used excessive force in effectuating his arrest. We AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10132

The vast majority of the facts are undisputed and, accordingly, we provide only an abbreviated version of the events leading to Escarcega's arrest. Around midnight on July 30, 2015, Officer Ryan Durrett, a Lubbock Police Department officer, noticed a pickup truck stopped in the lane of traffic with its hazard lights on. Escarcega and a female passenger occupied the truck. Durrett entered the license plate number onto his call sheet but did not immediately receive a return. Durrett then exited his patrol car and spoke with Escarcega, who explained that the truck was out of gas and asked for assistance in pushing it to a nearby gas station. Together Durrett and Escarcega pushed the truck to the station, after which Durrett departed. Shortly thereafter, the information on the truck returned and indicated that the truck was stolen. Durrett returned to the gas station, where Escarcega had remained, and informed Escarcega that the vehicle was stolen and began to take him into custody.[1] But before Durrett could handcuff Escarcega, Escarcega broke away and fled on foot. Durrett communicated to the dispatcher that Escarcega had fled and then pursued Escarcega in his patrol car.

During Durrett's pursuit, Escarcega repeatedly ignored Durrett's commands to stop running and to lie on the ground. After about five minutes, Durrett exited his patrol car to apprehend Escarcega on foot. However, Escarcega once again evaded apprehension and instead entered Durrett's unoccupied patrol car. The patrol car contained various police equipment, including body armor, an AR-15 rifle, a shotgun, and several hundred rounds of ammunition. Durrett pursued Escarcega into the patrol car, and, with Durrett's body partially inside the car through the open driver's side door,

---

[1] According to Escarcega, he had borrowed the truck from a friend and did not know it was stolen.

2

No. 17-10132

Escarcega began to drive the car as Durrett attempted to gain control of him by both tasing and striking him. As the two struggled, Escarcega accelerated and drove the patrol car into a utility pole. Upon impact, Durrett was thrown from the vehicle to the ground, causing injuries to his head and left leg. As for Escarcega, he claims that he was "stunned" by the taser and does not remember the crash but does not believe it caused him injury. After the crash, Escarcega exited the car and moved to the ground, in close proximity to where Durrett was lying. When he saw Escarcega moving toward him, Durrett radioed for backup using the signal for an officer in need of help.

Officer Jordan was the first backup officer to arrive at the scene. Jordan had heard over the radio some of Durrett's pre-crash struggle with Escarcega and knew Durrett had been pursuing Escarcega for some time. Dashboard camera footage from Jordan's patrol car depicts the majority of the events that ensued upon his arrival at the scene of the crash. Jordan saw Durrett lying on the ground, obviously injured. Jordan claims that Durrett was holding Escarcega's left arm, and it appeared that Escarcega was trying to either escape or get on top of Durrett. But Escarcega claims that he was merely sitting outside the patrol car in a "dazed state." Regardless, Escarcega was very close to Durrett, and Jordan immediately kicked Escarcega in the head, which moved Escarcega away from Durrett. Jordan then punched Escarcega five times in order to gain his compliance. During the ensuing struggle, Jordan struck Escarcega in the head and rib area six times with his baton before ultimately jettisoning the baton as ineffective in gaining Escarcega's compliance.

Several other officers arrived at the scene shortly after Jordan, including Officer Edwards. Upon arrival, Edwards saw the wrecked patrol car, Durrett lying injured on the ground, and several officers struggling with Escarcega. Edwards observed that the officers were trying to get Escarcega's hands out

3

No. 17-10132

from under him, so, to assist, Edwards began punching Escarcega in the left ribs.   With the help of another officer, Edwards was then able to grab Escarcega's hands, which Edwards put in a wrist lock until they were in handcuffs.   Escarcega continued to struggle even after being handcuffed; he ultimately was sedated by paramedics during transport to the hospital and again by hospital staff upon arrival.   Escarcega was later diagnosed with fractured ribs.

Escarcega brought this 42 U.S.C. § 1983 suit against Jordan and Edwards on December 3, 2015, alleging that they used excessive force in arresting him.[2]   Jordan and Edwards both moved for summary judgment on the basis of qualified immunity.   On December 30, 2016, the district court granted summary judgment on all of Escarcega's claims after concluding that Jordan and Edwards were entitled to qualified immunity.   Escarcega timely appeals.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).   Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   In making this determination, we view the evidence in the light most favorable to the nonmoving party.  *Rogers*, 755 F.3d at 350.   But when there is video evidence of the events in question, we will not credit the non-movant's version of the facts if they are "blatantly contradicted" by the video.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[2] Escarcega also brought a claim of municipal liability against the City of Lubbock Police Department, but that claim is not at issue on this appeal.

No. 17-10132

Escarcega bore the burden of negating the qualified immunity defense. *Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015). To overcome the asserted qualified immunity defense, Escarcega needed to show a genuine dispute of material fact as to whether (1) Jordan and Edwards violated a federal constitutional or statutory right or (2) the violated right was clearly established at the time of the challenged conduct. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

As for the first showing, Escarcega alleges that Jordan and Edwards violated his Fourth Amendment right against unreasonable seizures by using excessive force in arresting him. To prevail on an excessive-force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness . . . was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). Whether particular conduct constitutes excessive force is "necessarily fact-intensive" and "depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (alteration omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Supreme Court has provided the following factors to consider in assessing whether a use of force is excessive: "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Here, all three factors weigh against finding that either Jordan's or Edward's use of force was clearly excessive. Regarding the first factor, Escarcega had committed several dangerous offenses, including stealing a car, hijacking a police patrol car, and causing serious injury to a police officer by crashing the vehicle into a pole. Moreover, both Jordan and Edwards were

aware of at least some of these offenses when they arrived at the scene. Jordan learned through radio communication that Escarcega had stolen Durrett's patrol car, and he heard audio of their ensuing struggle over the radio transmission. Further, when Jordan arrived at the scene of the crash, he saw Durrett laying on the ground injured, with Escarcega sitting very close by. Similarly, Edwards received Durrett's radio signal indicating that Durrett needed help. When he arrived at the scene of the crash, he also saw Durrett lying injured on the ground and Escarcega very nearby.

Turning to the second factor, a reasonable officer, with knowledge of these facts, could have perceived Escarcega as posing an immediate threat to the safety of officers and the public. It is undisputed that Escarcega was in close proximity to a seriously injured police officer, whose injuries Escarcega had caused. Additionally, both Jordan and Edwards could reasonably be concerned that Escarcega might gain access to weapons on Durrett's person or in the patrol car. Indeed, the patrol car contained a multitude of weapons that Escarcega could quickly access. And, Jordan specifically noted that, when he arrived, he observed several pieces of Durrett's equipment on the ground within Escarcega's reach.

The only factual dispute that Escarcega offers against this conclusion is that, after the crash, he was not attempting to stand up or get on top of Durrett but rather was sitting on the ground in a dazed state. However, Escarcega concedes that he was "in close proximity" to Durrett when Jordan arrived at the scene. Indeed, the dashboard camera footage from Jordan's patrol car shows the two men appearing not merely close to each other when Jordan arrived but also in contact. Reasonableness of force is assessed based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). A reasonable officer forced to quickly

assess the dark, nighttime scene—which consisted of a wrecked patrol car containing weapons, Durrett's injured body, and Escarcega in close proximity to (and perhaps touching) Durrett—could perceive Escarcega as posing a serious threat even if, in actuality, he was "dazed." Our qualified immunity caselaw does not require officers to conduct a close examination of a suspect's demeanor before acting, but rather recognizes that officers are often forced to "make split-second judgments" in reaction to a "tense, uncertain, and rapidly evolving" scene. *Carroll v. Ellington*, 800 F.3d 154, 173–74 (5th Cir. 2015) (quoting *Graham*, 490 U.S. at 397). Accordingly, the factual dispute that Escarcega asserts regarding the state he was in immediately after the crash is immaterial and does not preclude summary judgment.

Third and finally, Jordan and Edwards could have reasonably perceived Escarcega to be resisting arrest or attempting to flee. Jordan, upon arrival, could reasonably discern that Escarcega hijacked and crashed the patrol car in an attempt to evade arrest and could reasonably suspect Escarcega would continue these efforts, thus justifying Jordan's initial kick and punches. After more officers arrived, the dashboard camera footage shows Escarcega repeatedly struggling against the officers' attempts to restrain him. When Edwards arrived, several officers were struggling to restrain Escarcega. In opposition, Escarcega asserts merely that he "was not resisting arrest at all" and offers an unsworn declaration to this effect. However, this assertion is directly contradicted by the dashboard video footage, which shows Escarcega struggling and resisting the officers' efforts to restrain him by pulling his hands away to avoid restraints, kicking officers, and grabbing Jordan's baton. Accordingly, we do not credit Escarcega's account of events and that account is insufficient to create a genuine factual dispute. *Scott*, 550 U.S. at 380. We also emphasize that Escarcega does not allege that he was punched *after* he was handcuffed. We conclude that the evidence shows that Escarcega was

resisting arrest at all times when force was used, and using force, such as punches, to gain control of a non-complaint suspect is not clearly excessive. *See, e.g.*, *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016).

In sum, Escarcega has failed to show a genuine dispute of material fact whether Jordan and Edwards used excessive force in arresting him. As a result, he has failed to show any violation of his Fourth Amendment right, which is a required element to overcome a qualified immunity defense.[3] Accordingly the district court properly granted Jordan's and Edward's motions for summary judgment on the basis of qualified immunity. The judgment of the district court is AFFIRMED.

---

[3] Because we conclude that Escarcega has failed to show that Jordan or Edwards violated any constitutional or statutory right of his, we do not address the second prong of the qualified immunity analysis.