## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10221

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2016

Lyle W. Cayce
Clerk

TANNER ELLIOT GRIGGS,

　　　　Plaintiff - Appellant

v.

OFFICER CHARLEY DANIEL BREWER,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, HAYNES, and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from the dismissal, based on qualified immunity, of a § 1983 claim asserting excessive force under the Fourth Amendment.

## I.

Officer Charley Brewer conducted a routine traffic stop of a vehicle driven by Tanner Griggs after Griggs ran a red light around 2:00 a.m. on September 4, 2013. A video and audio recording from Officer Brewer's dashboard camera captured most of the incident.

Officer Brewer smelled alcohol and suspected that Griggs might be intoxicated, so he asked Griggs to exit the vehicle and conducted a field sobriety

test. After testing Griggs for over fifteen minutes, he arrested Griggs for driving while intoxicated.

The decision to arrest came in the midst of the "one legged stand" part of the sobriety test. Officer Brewer told Griggs, who was attempting to stand on one leg, that he could stop. Griggs did not stop and responded "I'm doing it." Brewer retorted "you're not actually," told him to "put your hands behind your back," and grabbed Griggs's hands to handcuff him. As he did, Griggs lurched to the side and said "no, no." Brewer immediately performed a "takedown" maneuver and threw Griggs face-down onto the nearby grass and landed on top of him.

As Griggs lay on the ground following the take down, Officer Brewer attempted to handcuff him. Brewer's backup officer, Officer Cruce, came to his assistance. Both officers got on top of Griggs and struggled with him, repeatedly ordering him to put his hands behind his back. Brewer punched Griggs with a closed fist to the back of the head in an effort to gain control of his arms; when Griggs pulled his arms back again, Brewer punched him several more times to regain control. The officers finally gained control of Griggs's arms and handcuffed him.

As noted, a police video was entered into evidence. Although the details of the struggle are blurred in the video, the parties' testimony tells the same basic story: the officers punched Griggs when attempting to gain control of his arms; he withdrew his arms again; and the officers punched him until they gained (and maintained) control of his arms a second time.

Once Griggs was handcuffed, the officers hoisted him to his feet and Officer Brewer escorted him to the back of his patrol vehicle. Officer Brewer attempted to get Griggs into the vehicle, then pushed Griggs's head down into the vehicle. After he was pushed into the vehicle, with his legs still hanging out the door, Griggs kicked Officer Brewer in the chest. Officer Brewer

No. 16-10221

responded by quickly climbing on top of Griggs and delivering a closed-fisted punch to the head.

After he was punched the last time, Griggs receded into the car and Officer Brewer was able to close the door.  Brewer completed the arrest without further incident.  A blood sample taken from Griggs showed that his blood alcohol level was .273, more than three times the legal limit.

Griggs later brought these claims against Officer Brewer in his individual capacity, under 42 U.S.C. § 1983, alleging that Brewer used constitutionally excessive force in effecting the arrest.  The district court granted Officer Brewer's motion for summary judgment, holding that he was entitled to qualified immunity on all claims against him.  Griggs appeals.

## II.

This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).  Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

In reviewing an appeal from summary judgment, we "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *See Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).  Further, although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

## III.

## A.

The Fourth Amendment right to be free from excessive force during a seizure is clearly established. *See Poole v. City of Shreveport*, 691 F.3d 624,

No. 16-10221

627 (5th Cir. 2012). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 398 (1989). The use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Poole*, 691 F.3d at 627 (quoting *Graham*, 490 U.S. at 397). Factors to consider in determining whether the force was "objectively reasonable" include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396).

Succinctly stated, a plaintiff must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Poole*, 691 F.3d at 628 (citations and quotations omitted).

Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case. *Deville*, 567 F.3d at 167 (citations and quotations omitted).

## B.

In claims against state officials under 42 U.S.C. § 1983, the official may raise the affirmative defense of qualified immunity. The plaintiff has the burden to negate the defense of qualified immunity where, as here, it is properly raised. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations

4

No. 16-10221

and quotations omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (citations and quotations omitted).

In determining qualified immunity, courts engage in a two-step analysis. First, they assess whether a statutory or constitutional right would have been violated on the facts alleged. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* (citations and quotations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotations omitted). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations and quotations omitted). The two steps of the qualified immunity inquiry may be performed in any order. *Pearson*, 555 U.S. at 236.

In excessive force cases, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citations and quotations omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Id.*

IV.

Griggs argues that Brewer violated his Fourth Amendment rights by using excessive force in effecting the arrest, and that the district court erred in finding that Brewer was entitled to qualified immunity. Specifically, he raises

No. 16-10221

three issues: (1) whether Brewer used excessive force when he executed the "takedown" maneuver; (2) whether Brewer used excessive force by punching him while attempting to handcuff him; and (3) whether Brewer used excessive force by punching him in the face while he was in the police car. We address each issue in turn.

## A.

The first issue is whether the initial takedown amounted to excessive force. Recall that as Griggs was performing the one-legged stand during the sobriety test, Officer Brewer decided to arrest Griggs and told him to put his hands behind his back. As he did, Griggs lurched to one side and said "no, no." Brewer immediately placed Griggs in a choke hold, swept his legs out from under him, and body-slammed him onto the nearby grass. Griggs claims that this "takedown" amounted to excessive force.

Griggs argues that the district judge erred by failing to construe the facts in the light most favorable to him. He testified that he did not "flex" or demonstrate any intent to escape; he merely lost his balance and lurched to the side, so the use of force was not justified. In the alternative, he argues that even if he was being perceived as trying to escape, the takedown maneuver was not justified under the circumstances, as he was clearly unarmed, drunk, and unable to meaningfully resist arrest.

Griggs's first argument—that he was not resisting, but merely lost his balance—falls short. Although he is correct that, based on his testimony and the ambiguities in the video, a reasonable jury might find that he was not *actually* resisting arrest, that is not the proper inquiry in this appeal. A court must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts. *Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 234 (5th Cir. 2009) (emphasis added). "For that reason, when reviewing a grant of summary judgment in the Fourth Amendment

6

context, after first construing disputed historical facts in favor of the non-movant, the court must then ask how a reasonable officer would have perceived those historical facts." *Id.*  Here, we must conclude that, under the totality of the circumstances—that is, a late-night traffic stop involving a clearly drunk and obstinate individual, lurching to the side and stating "no, no," *in the act* of being handcuffed, immediately following the command to "put your hands behind your back"—Griggs's actions would, to a reasonable police officer, amount to resistance to arrest.

Griggs's second argument, that in any event the "takedown" was an unreasonable use of force, involves much of the same analysis as resistance to arrest set out above.  It is true, however, that Brewer had previously patted Griggs down and knew that he was unarmed,[1] and knew that Griggs was drunk.  So the inquiry here is whether responding to Griggs's conduct under these circumstances with a forceful "takedown" maneuver was a clearly excessive use of force, and whether the force was clearly unreasonable under the circumstances.  *See Poole*, 691 F.3d at 628.  Because our analysis is under the defense of qualified immunity, the question is whether Brewer's conduct was clearly unreasonable *in the light of clearly established law*.

Griggs points to two of our cases that he argues are analogous.  First, he relies on *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000), in which the court found that tackling a suspect who yanked away from an arresting officer and fled may have amounted to unreasonable force.  *Goodson* is inapposite, however, because the case turned not on whether the force was excessive, but on whether the force was justified *at all* because fact issues

---

[1] Pat downs do not always reveal weapons, leading to tragic circumstances.  *See, e.g., Tamayo v. Stephens,* 740 F.3d 991, 993 (5th Cir. 2011) (despite having been searched and placed in handcuffs by Officer Gaddis, Tamayo had a gun concealed on his person which he managed to maneuver in place; he then shot and killed Officer Gaddis).

remained as to whether the officer had reasonable suspicion to initiate the stop. *Id*; *see also Poole*, 691 F.3d at 632 (distinguishing *Goodson* on similar grounds).

Griggs next points us to *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013). There, a suspect pulled away from an officer who was attempting to make an arrest, and the officer immediately used a Taser on the suspect and tackled him to the ground. *Id.* at 372–73. After the suspect had been restrained with handcuffs, the officer tased him again. *Id.* The court found that the officer was not entitled to qualified immunity on the plaintiff's excessive force claims. *Id.* at 377–80. Although Officer Martinez's quick use of the Taser was arguably similar to Officer Brewer's quick use of the takedown maneuver, Martinez's decision to continue to tase Ramirez after he was already handcuffed was far more unreasonable than Officer Brewer's conduct. Even so, the *Martinez* court did not find that the quick use of a Taser on an arrestee who is resisting arrest amounts to a clearly established violation, so that case provides Griggs with little persuasive support. *Id.* at 378 (citing *Poole*, 691 F.3d at 626).

Thus we conclude that Officer Brewer's conduct in executing the initial takedown was not constitutionally unreasonable in the light of clearly established law. Or, stated differently, our precedent does not clearly establish that this "takedown" maneuver—against a drunken, erratic suspect who is resisting arrest—is constitutionally unreasonable. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citations and quotations

omitted).  Brewer's actions may not have been as restrained as we would like to expect from model police conduct, but qualified immunity "protect[s] officers from the sometimes hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (citations and quotations omitted), *overruled in part on other grounds*, *Pearson*, 555 U.S. at 227; *see also Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation.").

B.

The second issue is whether Officer Brewer's punching Griggs several times while he was on the ground, as Brewer attempted to handcuff him, amounted to excessive force.  Briefly, recall that after Officer Brewer threw Griggs to the ground, he placed his weight on top of him, and he attempted to handcuff him.  Griggs's hands were under his stomach.  Brewer then punched Griggs to gain control over his arms.  After Brewer gained control, Griggs, ignoring the officers' commands, again pulled away and again tucked his arms back under him.  Brewer again punched Griggs until he was able to regain control of his hands to handcuff him.

In assessing Brewer's conduct under the defense of qualified immunity, we need not determine whether an actual constitutional violation occurred. The question for us is whether Brewer's conduct was unreasonable in the light of clearly established law.  In this instance, Griggs points to no authority establishing that it was unreasonable for an officer to use non-deadly punches to gain control of the arms of a drunken, actively resisting suspect.  Griggs actively resisted and refused to comply with the officers' clear and audible commands.  Although the officers might have used less forceful conduct, there was no settled authority to put Brewer on notice that his use of force in such

circumstances violated Griggs's constitutional rights. *See Poole*, 691 F.3d at 627 ("We must evaluate an officer's use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (citations and quotations omitted).

We therefore hold that Officer Brewer is entitled to qualified immunity as to the claims stemming from his attempts to handcuff Griggs while Griggs was on the ground.

C.

The third issue is whether Officer Brewer's punch after Griggs kicked Brewer amounted to excessive force. Briefly, recall that after Officer Brewer finally handcuffed Griggs, he hoisted Griggs up, escorted him to his patrol vehicle, and pushed him in. Griggs, whose legs were still hanging out the door, delivered a kick to Officer Brewer's chest. Brewer quickly responded by placing his weight on Griggs's legs and delivering a swift punch to Griggs's face. Griggs receded into the vehicle, and Brewer closed the door.

Griggs argues that the punch was disproportionate to his kick and excessive because he was restrained in handcuffs. He cites caselaw that punching or otherwise gratuitously harming a restrained suspect constitutes excessive force. *See, e.g., Ramirez*, 716 F.3d at 378. The principle of law may be correct, but it has no application here. Griggs was clearly *not* subdued and under restraint; if he were, he would not have been able to physically assault Officer Brewer. He still posed a danger to Brewer, as evidenced by the fact that he did, in fact, kick Officer Brewer in the chest.

Applying the *Graham* factors, some use of force to gain control of Griggs was not objectively unreasonable. Under *Graham*, driving while under the influence is a serious crime; the intoxicated Griggs was capable of and evinced erratic behavior; and Griggs had been and continued to demonstrate active resistance during the course of the arrest. And, as it were, the punch was

No. 16-10221

effective for its purpose—Griggs immediately curled up into the back of the police car, and Brewer was able to close the door.  In short, the use of force was the sort of "split-second judgment" in a difficult situation that qualified immunity is designed to protect.  *See Graham*, 490 U.S. at 396–97.

## V.

Although the parties have different "spins" on the facts, the pertinent objective facts, demonstrated by testimony and the video, are undisputed.  In the light of this evidence, we conclude that no material fact issue exists and that none of Officer Brewer's conduct in effecting Griggs's arrest was objectively unreasonable in the light of clearly established law.  Accordingly, the district court did not err in holding that Brewer is entitled to qualified immunity, so the judgment is

AFFIRMED.