LESLIE H. SOUTHWICK, Circuit . Judge,
dissenting in part.
I concur with the majority’s decision to affirm the judgment of the district court as to Trammell’s claims against the City of Round Rock and Officer Ingles. I respectfully dissent, however, from the decision to reverse summary judgment as to Tram-mell’s excessive-force claims against Officers Fruge, Garza, and Neveu.
The district court granted a summary judgment, so we view the facts in the: light most favorable to Trammell. See Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016). Still, we must judge the reasonableness of the force used “from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether the officers’ actions were “‘objectively reasonable’ in light of the facts and circumstances confronting them,” we must be mindful that “police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Id. at 396-97, 109 S.Ct. 1865.
*346 The key moment in the encounter came when Officer Fruge reached for Tram-rheirs arm as he told Trammell to put his hands behind his back. At that point, Officer Fruge had three times asked Trammell to step away from his motorcycle before Trammell complied. He had asked Tram-mell to walk towards him, to which Tram-mell responded, “No.” Trammell had already stated' “I’m not going to jail” as he took his jacket off. When Officer Fruge then reached for Trammell’s arm as he told him to place his hands behind his back, Trammell concedes he “instantly pulled back,” saying it hurt and not to grab him there. The other officers saw Trammell pull away from Officer Fruge, and Officer Ingles reached for Trammell’s other arm. Trammell continued to pull away. This reaching and pulling escalated quickly — in a matter of seconds — and the officers responded by taking Trammell to the ground.
This is the sort of “tense, uncertain, and rapidly evolving.” situation that police officers often face in the performance of then-duties. See Graham, 490 U.S. at 397, 109 S.Ct. 1865. The officers faced an apparently intoxicated individual, at night in a dimly lit area, who would not respond to commands. True, Trammell’s alleged public-intoxication offense was a crime of minor severity, but the offense itself supports that a reasonable officer would have viewed Trammell as a danger to himself or others, as the offense requires. See Tex. Penal Code § 49.02(a). Moreover, it is clear that Trammell refused verbal commands and then physically resisted the officers’ attempt to arrest him. See Griggs, 841 F.3d at 314. In light of the circumstances confronting the officers, the officers’ decision to use this degree of force, which included a knee strike to Trammell’s thigh and pulling Trammell to the ground in a headlock, was not objectively unreasonable.
The majority concludes there are several genuine factual disputes, but it does not always view the facts from the perspective of a reasonable officer on the scene. For example, it concludes there is “a question of fact as to whether Trammell posed any danger to himself,” and there is “a factual dispute as to whether Trammell was actively resisting arrest....” When we review a grant of summary judgment in this context, we “first constru[e] disputed historical facts in favor of the non-movant,” but we “then ask how a reasonable officer would have perceived those historical facts.” Hill v. Carroll Cnty., 587 F.3d 230, 234 (5th Cir. 2009). So the question is not, for example, whether “a reasonable jury might find that [Trammell] was not actually resisting arrest,” but whether the force used was reasonable “under the facts as a reasonable.officer would perceive them[.]” Griggs, 841 F.3d at 313.
The majority also focuses on the “quick; ness with which the officers resorted to tackling Trammell to the ground” as a factor suggesting the force used was not reasonable. We have previously considered the quickness with which an officer resorts to force in assessing the reasonableness of that force. See Deville v. Marcantel, 567 F.3d 156, 168 (5th Cir. 2009). We have also recognized, though, that arrests are “inherently dangerous and can escalate precipitously if the arrestee is not overcome immediately.” Poole v. City of Shreveport, 691 F.3d 624, 631 n.6 (5th Cir. 2012). Here, the disputed use of force came in response to Trammell’s “instantly” pulling away from the officers as they attempted to gain control of his hands. In other words, the escalation started when Trammell physically resisted, and the officers responded in order to gain control. See Poole, 691 F.3d at 625-26, 629. Perhaps the officers reached a quick decision to reach for Trammell’s arm to place him under arrest, *347 but the majority agrees that “it is reasonable for an officer to attempt to grab a noncompliant suspect’s arm in an attempt to handcuff the suspect[.]” This was not a situation where mere passive resistance was quickly followed by a police officer’s sudden escalation of force. See Deville, 567 F.3d at 167-68.
The majority says it is “unclear at what point passive resistance becomes the sort of active resistance which justifies force,” suggesting that Trammell’s actions were on the passive side of resistance. Our cases discussing passive resistance, however, typically involve suspects that use little if any physical resistance. See Hanks v. Rogers, 853 F.3d 738, 746 (5th Cir. 2017); Deville, 567 F.3d at 167. Here, after Tram-mell declined to follow Officer Fruge’s commands, and after Officer Fruge asked Trammell to put his hands behind his back, Trammell actively pulled away from the arresting officers. The majority is also convinced a fact question exists about the reasonableness of the force used to gain control over Trammell once he was on the ground.
Regardless, though, the law was not clearly established so that “every ‘reasonable official would have understood’ ” that the force used here was unlawful. See Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The majority relies heavily on one case to conclude that the law was clearly established. See Goodson v. City of Corpus Christi, 202 F.3d 730 (5th Cir. 2000). That case focused on whether the officers violated the defendant’s right to be free from seizure without reasonable suspicion. See id. at 736-40. After reversing summary judgment on that claim, the court also held the defendant raised a fact issue regarding whether the officers, “who lacked reasonable suspicion to detain and frisk [the defendant] and from whom [the defendant] was not fleeing,” used reasonable force. Id. at 740. Goodson’s import in the excessive-force context is limited because it focused on the officers’ lack of reasonable suspicion. For that reason, we said in Poole that Goodson “lack[ed] analytical force in assessing the reasonableness of [the officer’s] actions” regarding the amount of force used. Poole, 691 F.3d at 632.
Griggs supports that the law was not clearly established in our case. See Griggs, 841 F.3d at 313-14. In Griggs, after the officer told the defendant to stop performing a one-legged stand sobriety test and to put his hands behind his back, the defendant “lurched to one side and said ‘no, no.’ ” Id. at 313. The officer “immediately placed [the defendant] in a choke hold, swept his legs out from under him, and body-slammed him onto the nearby grass.” Id. Once on the ground, the officer punched the defendant several times with a closed fist to the back of the head as he struggled to gain control of the defendant’s hands. Id. at 311, 315. We concluded that our precedent did not clearly establish that the officer’s takedown maneuver or use of “non-deadly punches” to gain control of the defendant was constitutionally unreasonable. Id. at 314-15. We distinguished Goodson because that case “turned not on whether the force was excessive, but on whether the force was justified at all because fact issues remained as to whether the officer had reasonable suspicion to initiate the stop.” Id. at 314. Here, as in Griggs, our precedents do not make clear to every reasonable officer that the force used was unlawful. See id. at 314-15.
I would affirm the district court in all respects. Therefore, I respectfully dissent in part.