JENNIFER WALKER ELROD, Circuit Judge: This lawsuit arises from the death of Jeremy W. Vann, who was shot and killed by police in a retail parking lot in Southa-ven, Mississippi during a small-scale drug sting operation. Because there are genuine issues of material fact that preclude the qualified-immunity determination as to one of the defendants, we AFFIRM in part, VACATE in part, and REMAND to the district court. I. The City of Southaven used prior arres-tees as confidential informants to buy small amounts of drugs from non-residents who agreed to sell them. When the drug sale was intercepted by police, the police would seize cash and property from the would-be drug sellers. Around 6:00 a.m. on May 28, 2014, Teon Katchens agreed through an online chat system to sell one ounce of marijuana for $150 to someone in Southaven, Mississippi. Later that morning, Katchens’s friend, Jeremy W. Vann, drove Katchens and Katchens’s three-year-old son from Memphis, Tennessee, to a parking lot in Sou-thaven for the exchange. Neither Vann nor Katchens was armed. Shortly after Vann arrived at the lot, his car was boxed in by unmarked civilian cars driven by undercover Southaven police officers! The officers exited their cars, and Vann reversed his car, trying to escape the cars that surrounded him. During Vann’s escape attempt, Vann’s car moved forward toward Sergeant Jeff Logan, who shot Vann before being knocked to the ground by Vann’s car. While Logan was on the ground, and as Vann’s car approached him for a second time, Lieutenant Jordan Jones fired a second shot at Vann. Vann died as a result of the shots fired by Logan and Jones. Katchens and his son survived. The parties agree that Vann maneuvered his car in an attempt to escape, was shot first by Logan, and was shot second by Jones. The parties disagree, however, on the precise sequence and intent behind certain events between Vann’s arrival at the parking lot and the moment Logan fired his weapon. The parties also disagree on whether the police officers used lights and sirens, wore police vests or badges, and shouted, “Police!” thus informing Vann of their status as officers.[1] According to the officers, in the course of Vann’s efforts to escape the cars boxing him in, Vann’s car slammed into Logan’s and another officer’s cars multiple times. As Logan was running between his own car and Jones’s car away from Vann, Vann’s car struck him, causing Logan to shoot in self-defense before rolling over the hood of the car and falling to the ground. In contrast, Plaintiff, who is Vann’s representative, argues that rather than Vann’s car striking Logan and causing him to shoot, Logan moved in front of the car and shot Vann as Vann attempted to escape through a gap between the cars'. It was only then that Vann’s car hit Logan. As Plaintiff puts it; the disputed central fact is therefore whether Logan ran to the opening and shot Vann to prevent him from fleeing or whether, instead, Logan was hit as he ran out of the way of Vann’s car. Plaintiff supports his account by noting that investigators found no evidence of tire tracks or burnt rubber on the pavement and the fact that any damage to the officers’ cars was either minimal or pre-exis-tent. Plaintiff also points to the testimony of Logan and Jones, both of whom agree that Vann was trying to escape. In Plaintiffs view, this concession forecloses the notion that Vann intentionally drove toward Logan and instead suggests Logan purposefully placed himself between Vann’s car and' his escape route. Plaintiff sued the officers and the City of Southaven under 42 U.S.C. § 1983, claiming that the officers violated Vann’s Fourth Amendment right to be free from unreasonable seizure, excessive force, and deadly force, and that the City had failed properly to train its officers and had permitted an official practice or custom that violated the constitutional rights of the public at large. The officers and the City simultaneously moved for summary judgment.[2] The district court granted the officers’ and the City’s summary-judgment motion. With respect to the officers, the district court concluded that Plaintiff failed to show the violation of a clearly established right under either factual scenario: Logan attempting to dodge Vann’s .oncoming car or Logan attempting to stop Vann from fleeing.[3] The district court concluded that Plaintiffs alleged causes of action against the City were insufficient, first, because Plaintiff failed to show an underlying constitutional violation according to clearly established law, and, second, because he failed to bring sufficient evidence or make adequate arguments regarding a particular policy that led to the events at issue. Plaintiff now appeals. II. “This court reviews de novo the district court’s resolution of legal issues on a motion for summary judgment on the basis of qualified immunity.” Hanks v. Rogers, 853 F.3d 738, 743 (5th Cir. 2017) (quoting Griggs v. Brewer, 841 F.3d 308, 311 (5th Cir. 2016)). Summary judgment is appropriate only if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Id. (quoting Griggs, 841 F.3d at 311-12); see also McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir. 2002) (en banc). “[W]e view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.” Hanks, 853 F.3d at 743 (quoting Griggs, 841 F.3d at 312); see also Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (“Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant...,”). “A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official’s allegedly wrongful conduct violated clearly established law.” Hanks, 853 F.3d at 744 (citation omitted) (quoting Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010)). III. Because there are genuine disputed issues of material fact regarding Logan’s actions, we vacate the district court’s grant of summary judgment to Logan.[4] The central disputed fact' is whether Logan ran to the opening and shot Vann to stop him from fleeing or whether Logan ran between the cars to get out of Vann’s way and then shot Vann because Vann was going to hit him. Viewing the evidence in the light most favorable to Plaintiff, this fact is in dispute. It is also material. The Supreme Court has “repeatedly told courts ... not to define clearly established law at a high level of generality.” Ashcroft v. al-Kidd,, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). “The . dispositive question is ‘whether the violative nature of particular conduct is clearly established.’ ” Mullenix v. Luna, — U.S.-, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074). In Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), for example, the specific conduct at issue was “shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight.” 543 U.S. at 200, 125 S.Ct. 596. In Mullenix, a qualified-immunity case involving a fatal shooting, the relevant circumstances included “a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer....” 136 S.Ct. at 309. In this case, with respect to the reasonableness of Logan’s conduct, the district court, to conclude that Logan’s conduct was reasonable, primarily considered the fact that Logan was in the way of Vann’s accelerating car when he shot at Vann. Vann v. City of Southaven, 199 F.Supp.3d 1129, 1140, 1143, 1146 (N.D. Miss. 2016). This conclusion, the district court suggested, is supported by this circuit’s precedent. See, e.g., id. at 1147 (citing Hathaway v. Bazany, 507 F.3d 312 (5th Cir. 2007)) (“The Fifth Circuit has thus made it clear that, in situations where an officer feels threatened by an oncoming vehicle arid has little time t» react, courts owe a great deal of deference to that officer’s decision regarding whether ... to fire his weapon.”). When viewing the facts in the light most favorable to Plaintiff, however, Logan’s running into the way of Vann’s car and shooting at Vann are not distinct acts. Plaintiff contends that “Logan ran to the opening and shot Vann to prevent him from fleeing.” Id. at 1134 (emphasis added) (quoting Pl.’s Br. at -6-7). As Logan himself admits, describing the moment when he ran, turned to face Vann, and shot, “it all happened at one time.”[5] Id. at 1132 (quoting Defs.’ Br. at 12-14). Viewing these steps together as the relevant conduct, before a car was headed in Logan’s direction, Logan was confronted with the following situation: whether to shoot a misdemeanor suspect quickly maneuvering his car to escape surrounding cars and driving in the direction of an area with no officers.[6] It .has long been .settled that “[w]here [a fleeing] suspect.poses no.immediate threat to the officer and .no threat to others, the harm resulting, from failing to apprehend him does not justify the use of deadly force to do so.” Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Put simply, “[a] police officer may not seize an' unarmed, nondan-gerous suspect by shooting him dead.” Id. The district court here rejected Gamers application, determining instead that “a more particularized, and hence more relevant” example is required to guarantee that “[t]he contours of the right ... [are] sufficiently clear that a reasonable official would understand, that what he is. doing violates that right.” Vann, 199 F.Supp.3d at 1138 (citing Brosseau, 543 U.S. at 199, 125 S.Ct. 596). This court has held, however, that GameVs proposition “holds as both a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle.” Lytle v. Bexar Cty., 56Ó F.3d 404, 417-18 (5th Cir. 2009) (citations omitted). The outcome in the present case therefore depends on the facts. On the one hand, if Logan was running away from Vann’s moving' car and thus being threatened by it at the time he shot Vann, this case could fall in line with other car-related cases where courts have determined that a reasonablé officer would have resorted to deadly force. See, e.g., Mullenix, 136 S.Ct. at 311-12 (holding the officer acted reasonably .where the suspect “was speeding towards a confrontation with officers he had threatened to kill”); Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 2021-22, 188 L.Ed.2d 1056 (2014) (holding the officer acted reasonably where- the- suspect’s- reckless driving “posed a grave public safety risk”); Scott v. Harris, 550 U.S. 372, 385-86, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (holding the officer acted reasonably where the car chase “posed á substantial and immediate risk of seiious physical injury to others”); Brosseau, 543 U.S. at 197-201, 125 S.Ct. 596 (holding' the officer did not violate clearly established law when faced with the following situation: “whether to shoot a disturbed - felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight”). On the other hand, this case could fall into a group of “factually distinct” cases involving “suspects who may have done little ■ more.- than flee at relatively low speeds.” Mullenix, 136 S.Ct. at 312 (citing Walker v. Davis, 649 F.3d 502, 503 (6th Cir. 2011); Kirby v. Duva, 530 F.3d 475, 479-80 (6th Cir. 2008); Adams v. Speers, 473 F.3d 989, 991 (9th Cir. 2007); Vaughan v. Cox, 343 F.3d 1323, 1330-31, 1330 n.7 (11th Cir. 2003)). As this court has noted, even if a suspect is in a car, the Supreme Court has riot declared “open season on suspects fleeing in motor vehicles.” Lytle, 560 F.3d at 414. “[C]ourts must take care not to define a case’s ‘context’ in a manner'that imports genuinely disputed factual propositions,” Tolan, 134 S.Ct. at 1866. Here, we take such care. While it is possible that Logan fired at Vann because Vann’s accelerating car posed a threat to him and the other officers,- evidence also supports the possibility that, absent a threat, Logan ran into the way of Vann’s ear and shot Vann .to prevent him from successfully fleeing. Our case law establishes that a reasonable officer would not shoot a fleeing suspect where the suspect poses no threat to the officer or others.[7] Thus, resolving this disputed fact is crucial-to the summary-judgment analysis. IV. The district court granted summary judgment to the City as to Vann’s municipal liability claims. Finding no error in the district court’s analysis regarding the City, we AFFIRM. V. For the foregoing reasons, we AFFIRM the district court’s grant of summary judgment to the City, Jones, Yoakum, and Long; VACATE the district court’s grant of summary judgment.to Logan; and REMAND for further proceedings consistent with this opinion. . Although Katchens states in a sworn affidavit that he did hear Logan yell, “Freeze!” and that Vann revved' the engine of his car at some point after that, he also states that he never heard anyone yell, "Police!” and he did not know that the two men in front of Vann’s car were police officers. In fact, in his affidavit, Katchens states he "remember[s] thinking that the guy [Vann and him] were supposed to meet had set [them] up to be robbed.” Plaintiff further supports the position that Vann and Katchens did not know that the people surrounding them were 'police officers with the fact that the officers were in plain clothes, the fact that neither Jones nor Logan wore a police vest, and additional testimony from Katchens that he did not see any flashing lights on either of the vehicles in front of Vann's car arid never heard a siren. . The City and the officers were and continue to be represented by the same counsel in single briefs and motions. . Though acknowledging Logan’s and Plaintiff’s differing accounts and claiming to accept Plaintiff's account, the district court concluded it was unclear that Logan “did anything other than his job duties required.” Vann v. City of Southaven, 199 F.Supp.3d 1129, 1143 (N.D. Miss. 2016). In the district court’s view, "if criminals came to believe that police officers would simply let them escape if they violently resisted arrest, ... there would be many more suspects crashing their vehicles against police cars rather than quietly submitting to arrest.” Id. . See White v. Pauly, -U.S.-, 137 S.Ct. 548, 553, 196 L.Ed.2d 463 (2017) (Ginsburg, J., concurring) (clarifying that the qualified-immunity analysis as to one officer at the scene does not decide the question for other officers at the scene). . The following is the relevant portion of Logan’s deposition: Q. Let’s take it this way. You're—are you running I guess between your vehicle and the Jones vehicle? Are you walking? Describe it. A. It’s kind of a run. I’m not really a runner. I’ve had surgery. I was old. I wouldn't call it running, but I was going as fast as I could. You may call it a run, yes, sir. Q. So you’re going as fast as you can. What happens next? A. I know—I mean, I’m at kind of like an angle. I can see this is—he's fixing to hit me and push me forward. So I turn and face him; and as a reaction, don’t know why I did it, instead of two handed grip and shoot like you’re supposed to, my left hand hit the hood of the car at the same time as I—I mean, it all happened at one time; and I fired one round into the windshield. Furthermore, while Katchens’s affidavit seems to suggest by the order of his statements that Logan yelled, "Freeze!” after Logan was already in front of Vann's car, this timing is inconsistent with Logan’s description of the relevant events. During his deposition, Logan stated that he yelled, "Police Department,” before Vann allegedly backed his car into another officer’s car and before he ran to the spot at which he was hit by Vann’s car. In the excerpts provided from Logan's deposition, Logan does not mention yelling, “Freeze!” at any point between running in the way of and shooting at Vann. He also does not mention hearing the engine rev at this time. In fact, in a signed statement by Logan, he states that he heard the car’s engine rev before he started to move out of its way, . The dissenting opinion disagrees as to the "moment” that is relevant to our inquiry. In Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001), we held that "[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer] shooting [an individual].” 246 F.3d at 493 (citing Fraire v. City of Arlington, 957 F.2d 1268, 1276'(5th Cir. 1992)). But, here, Plaintiff argues that Logan never faced' a threat. And whether he did face a threat before running and shooting Vann is a factual dispute. This is an important distinction, which was noted in Fraire, the case on which Bazan relied, See 957 F.2d at 1276. We noted in Fraire that "[a]t the moment of the shooting, [the officer did] riot appear to have been'trying to hinder ■[the suspect’s] escape. Rather, as [the officer] avers, he clearly appeals, to have been trying to prevent his own serious injury or death.” Id. Here, it is the former rather than latter. For the same reason, this decision does not implicate the "provocation doctrine,” which, as the dissenting opinion explains, is “a. theory that an earlier Fourth Amendment violation can transform an otherwise reasonable use of force into a constitutional violation.” . With respect to Plaintiff’s burden of showing that Logan violated Vann’s clearly established rights, see Cass v. City of Abilene, 814 F.3d 721, 732 (5th Cir. 2016), Plaintiff satisfied his burden. First, Gamer's general prohibition against using deadly force- in nonthreatening situations gave Logan a fair and clear warning against running in the way of and shooting at Vann where he posed no threat to .Logan or others in the .area. See Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (“[General statements of the law are not .inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity .to the specific conduct in question, even though ‘the veiy action in question has not previously been held unlawful,’ ” (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))). Second, at the district court level, Plaintiff cited to Godawa v. Byrd, 798 F.3d 457 (6th Cir. 2015), in which the Sixth Circuit denied qualified immunity based on the open possibility that the officer -shot the suspect attempting to flee in a car at a low speed where the officer was not presented with “an actual and imminent threat." 798 F.3d at 468. While questioning Godawa's factual relevance, the district court did not engage with Godawa because the decision was issued after the shooting in this case. Vann, 199 F.Supp.3d at 1137 n.4. Nonetheless, the Sixth Circuit’s analysis and conclusion in Go-dawa were not novel, The Godawa court discussed the Sixth Circuit's opinion in a similar case, Smith v. Cupp, 430 F.3d 766 (6th Cir. 2005), just as this court did in reaching the same conclusion in Lytle in 2009. See Godawa, 798 F.3d at 464-65; Lytle, 560 F.3d at 416. Plaintiff thus successfully showed that the unlawfulness of Logan's actions was apparent in light of pre-existing law. McClendon, 305 F.3d at 332 (“[T]he unlawfulness of the state official’s actions 'must be apparent’ in light of pre-existing law to preclude the official from invoking qualified immunity.”).